# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 12, 2024

Lyle W. Cayce
Clerk

No. 23-50112

KENNETH BELL, FIRE MARSHAL, *on behalf of himself and all others similarly situated*; SHERRY DABBS-LAURY, *on behalf of herself and all others similarly situated*; CHARLENE DIRKS, *on behalf of herself and all others similarly situated*; WENDY BROWN, *on behalf of herself and all others similarly situated*; TONNIE WALKER-BECK, *on behalf of herself and all others similarly situated*,

*Plaintiffs—Appellants,*

*versus*

CAL-MAINE FOODS, INCORPORATED; TRILLIUM FARM HOLDINGS, L.L.C.; CENTRUM VALLEY FARMS, L.P.; LUCERNE FOODS, INCORPORATED,

*Defendants—Appellees.*

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:22-CV-246

---

Before STEWART, CLEMENT, and HO, *Circuit Judges.*

PER CURIAM:[*]

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 23-50112

The Class Action Fairness Act grants federal jurisdiction over class actions that meet several requirements, including an amount of controversy exceeding $5 million. *See* 28 U.S.C. § 1332(d)(2); *Miss. ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 166 (2014). Claims against multiple defendants may be aggregated to satisfy the $5 million threshold if the defendants were jointly liable to the plaintiff. *Id.* Because we agree with the district court that Plaintiffs failed to plead sufficient facts to establish the necessary controversy amount, we affirm.

This class action is brought by consumers in Texas who purchased eggs after Texas Governor Abbott's COVID-19 emergency declaration on March 13, 2020, through March 30, 2020. Defendants Cal-Maine Foods, Trillium Farm Holdings, Centrum Valley Farms, and Lucerne Foods are egg wholesalers that "sold, distributed, produced, or handled" the eggs available for purchase at the retailers where Plaintiffs bought eggs. Plaintiffs allege that, during this period, Defendants "nearly tripled" the price of eggs in Texas. Plaintiffs argue that the price increase violated the Texas Deceptive Trade Practices Act, which prohibits Defendants from "taking advantage of a disaster declared by the governor" by "demanding [] exorbitant or excessive price[s]" for food and other necessities. Tex. Bus. & Com. Code § 17.46(b)(27).

This isn't Plaintiffs' first rodeo in court. At the onset of the COVID-19 pandemic, Plaintiffs initially sued both the wholesalers that distributed eggs and the retailers from whom Plaintiffs purchased eggs, but the district court dismissed the case without prejudice for lack of subject matter jurisdiction. The district court held that Plaintiffs failed to show that any single Defendant would be liable for damages exceeding $5 million, or that all Defendants could be found jointly liable for the price increase. Plaintiffs filed a Rule 59 motion to amend the judgment to file a second amended complaint and brought the instant lawsuit while the motion was pending. Defendants

2

moved to dismiss this case for lack of subject matter jurisdiction and for failure to state a claim under Rules 12(b)(1) and 12(b)(6). The district court dismissed this case on similar grounds as the first case, noting that the factual allegations about the Texas egg market did not show that Defendants worked together to increase the price of eggs and that they were jointly liable.

We review a dismissal under Rule 12(b)(1) de novo and apply the same standard used by the district court. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hebert v. United States*, 53 F.3d 720, 722 (5th Cir. 1995)).

The sole issue before us is whether the amount in controversy exceeds $5 million. Plaintiffs argue that the amount in controversy plausibly does, because the requirement could be satisfied against Defendant Cal-Maine alone. In the operative complaint, Plaintiffs note that while only some Defendants participated in the distribution of eggs sold by each retailer, Cal-Maine was involved with all the retailers where the class members shopped at. And since Cal-Maine worked closely with the other Defendants to distribute eggs, Plaintiffs suggest that the amount in controversy may be aggregated between them.

Plaintiffs also offer several alleged facts about the general Texas egg market. Using state population data, per capita egg consumption statistics, and information regarding the retailers' market share in Texas, Plaintiffs estimate that the class purchased approximately two-thirds of the 56 million dozen eggs purchased by Texans in March 2020. Combined with a conservative average price increase of one dollar per dozen, Plaintiffs estimate at least $37.5 million in controversy can be attributed to Cal-Maine. Given these allegations, Plaintiffs urge the court to infer Cal-Maine's share of the market, and in turn, find that the alleged amount in controversy is reasonable.

The district court rejected these allegations, finding them insufficient. We agree. The Supreme Court has long held that to survive a motion to dismiss, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (1955). And when a defendant files a motion to dismiss for lack of subject matter jurisdiction, "the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true," and only if the "allegations are sufficient the complaint stands." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

Guided by these principles, we find Plaintiffs' factual allegations to be much too speculative. It would require us to make unreasonable inferences about the amount in controversy against Cal-Maine and about joint liability among Defendants.

First, and perhaps most fatally, Plaintiffs do not provide any facts that connect Defendants' participation in production, packing and distribution of eggs, to the price increase of eggs. It's unclear who in the chain of production, distribution, and sales was responsible for the alleged price spike, and how that responsibility may have been distributed. The district court notes that "these allegations do not show that the Defendants are related entities, worked together, or conspired to increase the price of eggs during the state of emergency."

Next, Plaintiffs omit any facts as to Defendants' market share as distributors and instead focus only on the retailers' share in the egg market. While they indicate that Cal-Maine is a "main supplier" that participates in production, packing, and distribution of eggs across the relevant retailers, they provide no facts as to how Cal-Maine's market share compared to the other Texas egg wholesalers that the retailers worked with. Instead, Plaintiffs contend that Cal-Maine is responsible or involved with *all* eggs sold by these

No. 23-50112

retailers.  Furthermore, Plaintiffs' mathematic inferences fail to exclude categories of eggs (i.e., non-generic brand eggs) and consumers (e.g., restaurant purchasers), unreasonably skewing the calculations.

While the plausibility standard provides a low bar for factual allegations at this stage in the litigation, Plaintiffs' broad factual claims are too generic and remote "to raise a right to relief above the speculative level."  *See Twombly*, 550 U.S. at 555.

For these reasons, we affirm.